IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| STACEY MALIN, | : | HON. JEROME B. SIMANDLE |
| Plaintiff, | : | Civil No. 10-0661 (JBS/AMD) |
| v. | : | |
| METROPOLITAN LIFE INSURANCE COMPANY, | : | **OPINION** |
| Defendant. | : | |

APPEARANCES:

David J. Bever, Esq.
BARROS, MCNAMARA, MALKIEWICZ & TAYLOR, P.A.
2 West Loockerman Street
Dover, DE 19901
        Counsel for Plaintiff

B. John Pendleton, Jr., Esq.
Nancy Shane Rappaport, Esq.
DLA PIPER LLP
1650 Market Street
Suite 4900
Philadelphia, PA 19103
        Counsel for Defendant

**SIMANDLE**, District Judge:

## I.  INTRODUCTION

        This matter concerns the somber topic of the untimely death

of Stephen J. Malin, husband to Plaintiff Stacey Malin.  Mr.

Malin died of a gunshot wound to the head on February 21, 2009.

At the time of his death, Mr. Malin was a participant in a group

employee insurance plan administered by Defendant Metropolitan

Life Insurance Company ("MetLife"), which included a supplemental

life insurance benefit and an accidental death insurance benefit.

Plaintiff, Mr. Malin's wife and designated beneficiary under the plan, sought recovery of the supplemental life and accidental death benefits after Mr. Malin died.  Plaintiff's application was denied by Defendant, however, because Defendant determined, based on the records submitted by Plaintiff, that Mr. Malin died as a result of suicide, which was a listed basis for the denial of coverage under the plan.  Consequently, Plaintiff brought this action, contesting that denial of benefits.

Presently before the Court is Defendant MetLife's motion for summary judgment.  [Docket Item 22.]  The parties disagree over what question the motion requires the Court to answer.  The motion does not, as Plaintiff's counsel suggests, call on the Court to determine if there is a question of fact over whether Mr. Malin's death was the result of an accident or the result of suicide.  Instead, this motion calls on the Court to determine a more narrow question: whether a genuine dispute of fact exists as to whether, based on the administrative record, MetLife's determination that Mr. Malin died as a result of suicide was an abuse of discretion.  As explained below, the Court finds that it was not an abuse of discretion based on this record, and will therefore grant Defendant's motion for summary judgment.

## II.  BACKGROUND

The following facts are taken from the undisputed

2

administrative record, which includes, <u>inter alia</u>, Mr. Malin's benefits plan documents, Mr. Malin's certificate of death, the contemporaneous New Castle County police reports, and Mr. Malin's medical records from February 21, 2009.

### A.  Mr. Malin's Death

According to Plaintiff's contemporaneous statements, memorialized in the police reports contained in the administrative record, on the evening of February 20, 2009, Plaintiff and Mr. Malin had been out socializing and drinking until early in the morning of February 21.  Dykovitz Rep., Def.'s Ex. D, ML000258.[1]  On the drive home, they began to argue, and the argument continued after they returned to their house in Newark, Delaware.  After exiting the vehicle they had been driving home, Mr. Malin got into a different car that was parked in the driveway, and sped up and down the street a few times before reparking the car in the driveway and entering the house. Abram Rep., ML000269.

The argument grew in intensity when they entered the house and culminated in the living room with Mr. Malin brandishing a revolver.  Police accounts differ as to what happened next with the gun; in one account, Plaintiff reported that Mr. Malin threw

---

[1] The administrative record, attached in various configurations to the parties' submissions, are Bates stamped according to the convention ML000XXX.  Where possible, the Court will cite to both an attached exhibit and the Bates stamp number.

the gun at her.  Dykovitz Rep., ML000258.  In another account, Plaintiff reported that she slapped the gun out of Mr. Malin's hand.  Abrams Rep., ML000269.  When Mr. Malin recovered the gun, Plaintiff reported to one of the investigating police officers that Mr. Malin removed some bullets from the gun.  Id.[2]  In all accounts, Plaintiff reported that after recovering the gun, Mr. Malin pointed it at his own head.  Plaintiff said that she then closed her eyes and begged Mr. Malin to stop.  Id.  She reported that she heard him pull the trigger and the gun made a click, apparently because there was no bullet in the chamber.  Dykovitz Rep., ML000260.  Plaintiff reported that she continued yelling at him to stop and put the gun down; however, he pulled the trigger a second time and this time the gun discharged, firing a bullet through Mr. Malin's head.  Devine Rep., ML000265.

Plaintiff then called for emergency assistance.  Id.  Mr. Malin was transported by EMS to Christiana Hosptial.  Devine Rep. ML000265.  The investigating police officers classified the incident under a "crime code" of "8102 - Suicide."  Abram Rep., ML000267.  Plaintiff reported to investigating officers that Mr. Malin had previously thrown the revolver at her in the past, broken objects inside the residence when they argued, and on two

---

[2] Several investigating officers noted in their reports the presence of unused bullets on the living room coffee table; two of them specifically reported that there were four bullets that had apparently been removed.  See, e.g., Bingnear Rep., ML000266.

4

prior occasions Mr. Malin had "placed the gun to his head after an argument, and pulled the trigger" which Plaintiff characterized as "playing a game of Russian roulette."  Dykovitz Rep., ML000258; Abram Rep., ML000269.  Plaintiff reported that Mr. Malin had attended psychiatric counseling and was taking medication to control his behavior.  Dykovitz Rep., ML000258.

Mr. Malin died at Christiana Hospital later in the day on February 21, 2009, after his treating physicians determined that he would not recover from his injuries.  Def.'s Reply Ex. A, ML000399.

The next day, Assistant Medical Examiner Dr. Jennie Vershvovsky performed an external examination of Mr. Malin's remains at the Medical Examiner's Office.  Abram Rep., ML000270. Dr. Vershvovsky finished her investigation and completed Mr. Malin's certificate of death on February 23, 2009, determining the cause of death as "gunshot wound to head."  Certificate of Death, Def.'s Ex. C, ML00014.  In a separate section on the certificate of death, titled "manner of death", Dr. Vershvovsky checked a box labeled "suicide" and left blank a box labeled "accident."  Id.

**B.  Insurance Benefits Plan**

Mr. Malin's coverage under the employer-funded Siemens Corporation Group Insurance and Flexible Benefits Program ("the Plan") began effective January 1, 2009.  Wales e-mail, June 24,

2009, Def.'s Ex. B, ML00016. The Plan, which is administered by Defendant, is an employee benefit plan regulated under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq. Plan at 171, Def.'s Ex. A, ML00234; Aetna Health Inc. v. Davila, 542 U.S. 200, 207-08 (2004).

The Plan provided several health, medical and life insurance benefits, including life insurance benefits and personal accident insurance benefits. The life insurance benefits included a basic employee life insurance that was employer paid, and an optional "supplemental life insurance" benefit. Plan at 110, ML00173. The basic life insurance benefit was payable to the insured's beneficiary regardless of the cause of death. Id. at 112, ML00175. The supplemental life insurance benefit, however, was not payable "in the event of suicide within two years after the effective date of the person's coverage." Id. at 119, ML00182.

The personal accident insurance benefit paid a premium if the insured suffered a serious injury or death as a result of an accident. Id. at 122, ML00185. The personal accident insurance did not, however, cover losses resulting from, inter alia, "intentionally self-inflicted injuries" or "suicide." Id. at 126, ML00189. The terms "suicide" and "accident" are not defined in the Plan document.

The Plan document explains the procedure for submitting and determining claims for benefits under the Plan. A claim for

6

benefits is submitted to and approved or denied by the Plan's claims administrator (Defendant MetLife, in this case).  Id. at 155, ML00217.  If a claim is denied, the claimant is entitled to appeal the determination to MetLife.  Id. at 156, ML00218.  The Plan grants MetLife discretion to make determinations of benefits under the Plan.

> Metlife has full and exclusive discretionary authority to interpret all provisions of the Life, Long-term Care and Personal Accident plans. For those plans for which the Administrative Committee and MetLife have full and exclusive discretionary authority to interpret Plan provisions they also have full and discretionary authority to determine material facts and eligibility for benefits, and to construe the terms of the Plans respectively.   Interpretations and determinations made by the Administrative Committee or MetLife will be final, conclusive, and binding; unless it can be shown that the interpretation or determination was arbitrary and capricious.  The decision on appeal is final.

Id.  The Plan explains that when a claim is denied on appeal, the beneficiary has the right to bring a civil action under Section 502(a) of ERISA to contest the determination.   Id.

## C.  Procedural History

Plaintiff submitted a claim for life insurance benefits on May 22, 2009, which included a claim form, an affidavit from Plaintiff as to her status as beneficiary, and Mr. Malin's certificate of death.  Def.'s Ex. E, ML00011-14.  On June 26, 2009, MetLife paid the basic life coverage.  Def.'s Ex. F,

ML00048.[3]  On July 13, 2009, MetLife denied Plaintiff's claim for supplemental group life insurance benefits, due to its determination that Malin committed suicide within two years of the effective date of his coverage under the Plan, based on the State of Delaware certificate of death which indicated that the manner of death was "suicide."  Def.'s Ex. G, ML00023-24.

Plaintiff, through counsel, replied on August 31, 2009, registering disagreement with the decision to deny benefits. Def.'s Ex. G, ML00027.  Plaintiff's counsel explained that "I am currently in contact with the Delaware Medical Examiner's Office to have the official cause of death changed from that of a self inflicted injury to that of an accident."  Id.  On October 12, 2009, MetLife responded, acknowledging Plaintiff's desire to appeal the denial of claim and requesting that Plaintiff's counsel forward any documentation in reference to the appeal.

Approximately ten months later, on August 20, 2010, Plaintiff's counsel submitted documents in support of Plaintiff's appeal, which included the police reports and Mr. Malin's medical records, but did not include an amended or revised certificate of death.  Def.'s Ex. J, ML000254.  On February 21, 2011, MetLife denied Plaintiff's appeal, stating that the denial was based on a

---

[3]  Defendant reports in its brief in support of the motion that the basic life benefits paid amounted to $64,000, though the Court can find no documentation of the amount paid in the administrative record.

review of the entire claim file, and explaining that the denial
of appeal was based in part on the medical examiner's
determination that Mr. Malin's manner of death was suicide.
Def.'s Ex. K, ML000251-52.  The denial of appeal letter further
noted that Plaintiff's counsel had indicated an intent to have
Mr. Malin's certificate of death changed to indicate a manner of
death of accident rather than suicide, and that Plaintiff's
counsel never submitted such a revised document, and that the
determination to deny Plaintiff's supplemental life insurance
claim must consequently be upheld.  Id., ML000252.

Plaintiff also, on appeal, sought benefits under the
personal accident insurance plan.  MetLife also denied this
claim, explaining that it was relying again on the medical
examiner's determination that the manner of death was suicide and
was not an accident.  Id.  MetLife went on to say, however, that
even if the medical examiner had not determined that the manner
of death was suicide, the personal accident insurance benefit
would not be payable because, based on an independent review of
the police reports, MetLife, as the factfinder on appeal, found
Mr. Malin's actions to constitute an "intentional self-inflicted
injury."  Defendant explained that, based on the fact that Mr.
Malin held a gun to his head and pulled the trigger indicated
that his intent was to injure himself.  Id.

9

Prior to submitting the full administrative record to Defendant, on May 21, 2010, Plaintiff initiated this action by filing her Complaint, seeking damages for breach of insurance contract under Delaware state law, in the Superior Court of Delaware, New Castle County.  [Docket Item 1.]  Plaintiff served Defendant on July 9, 2010, and on August 6, 2010, Defendant removed the action to this Court, on the grounds that Plaintiff's stated state-law cause of action was completely preempted by ERISA, and that her claim should be construed as stating a claim for judicial review of a denial of claims under ERISA § 502(a), 29 U.S.C. § 1132(a)(1)(B).  Aetna Health Inc. v. Davila, 542 U.S. 200 (2004); Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58 (1987).  Defendant subsequently filed the instant motion for summary judgment.  [Docket Item 22.]

## III.  DISCUSSION

### A.  Standard of Review

Though Plaintiff's Complaint seeks damages under state law, and a federal question does not appear on the face of Plaintiff's Complaint, both parties brief this motion under the understanding that Plaintiff's alleged ground for relief is based exclusively on ERISA.  The Court agrees, holding that Plaintiff's state-law Complaint is preempted by ERISA, which provides the rule of decision, and that this Court has removal jurisdiction as a

10

result of preemption.  Metropolitan Life, 481 U.S. at 66 ("causes of action within the scope of the civil enforcement provisions of [ERISA] § 502(a) [are] removable to federal court.")  Consequently, the Court will decide the instant motion applying the federal common law that has developed in ERISA cases, rather than applying Delaware state law.

A participant or beneficiary under a covered plan can challenge a denial of benefits in federal court under ERISA § 502(a).  Any dispute over the precise terms of the plan is normally resolved by the Court under a de novo standard of review, unless the terms of the plan "give[] the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  Where such discretionary authority is granted to the administrator or fiduciary, the Court is to apply a "deferential standard of review".  Id. at 111.  This "deferential" review has been described as an arbitrary and capricious standard.  Doroshow v. Hartford Life & Acc. Ins. Co., 574 F.3d 230, 233 (3d Cir. 2009).  "Under the arbitrary and capricious (or abuse of discretion) standard of review, the District Court may overturn a decision of the plan administrator only if it is without reason, unsupported by substantial evidence or erroneous as a matter of law."  Abnathya v. Hoffmann-La Roche, Inc., 2 F.3d 40, 45 (3d Cir. 1993)

11

(internal quotations and citations omitted) (abrogation on other grounds recognized by Miller v. American Airlines, Inc., 632 F.3d 837, 847 (3d Cir. 2011)).  "This scope of review is narrow, and the court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits." Id. (internal quotations and citations omitted).

The Supreme Court has recognized one potential source of abuse of discretion in cases where, as here, the same party both makes the determination of benefits and is responsible for payment of such benefits.  In such cases, the Supreme Court has directed courts to weigh the potential for conflict of interest on the part of the decisionmaker as one factor among many in determining whether the determination to deny benefits was arbitrary and capricious.  Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 117 (2009).  The Supreme Court was careful to specify, however, that the presence of such a conflict does not subject the denial of benefits decision to a higher standard of review, such as a de novo review.  Id. at 116.

The motion before the Court is a motion by Defendant for Summary Judgment pursuant to Fed. R. Civ. P. 56.  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the

12

suit under the applicable rule of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  The Court must view any evidence in favor of the nonmoving party and extend any reasonable favorable inferences to be drawn from that evidence to that party. Hunt v. Cromartie, 526 U.S. 541, 552 (1999).  Where the nonmoving party bears the burden of persuasion, the moving party may be entitled to summary judgment merely by showing that there is an absence of evidence to support an essential element of the nonmoving party's case. Fed.R.Civ.P. 56(c)(1)(B); Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Thus, in an ERISA case like this, where the Plaintiff challenges the denial of benefits under a Plan that grants discretionary authority to the plan administrator to interpret the Plan's terms and determine the material facts at issue, the Court's task is to determine "whether or not, based on the undisputed administrative record, [Defendant's] decision was an abuse of discretion." Kao v. Aetna Life Ins. Co., 647 F. Supp. 2d 397, 409 (D.N.J. 2009) (citing Marciniak v. Prudential Fin. Ins. Co. of Am., 184 F. App'x 266, 270 (3d Cir. 2006)).  This determination must consider as one factor among others the inherent conflict of interest present.

### B.  Analysis

Plaintiff raises several reasons that the Court should deny Defendant's motion: (1) that the Court should apply a heightened

standard of review to Defendant's denial of coverage because of the inherent conflict of interest discussed above; (2) that material issues of fact exist in the administrative record as to whether Mr. Malin intended to injure or kill himself and that the Defendant failed to show any evidence of intent as to Mr. Malin; and (3) that Defendant's determination failed to rebut the common-law presumption against suicide.  The Court will address these arguments individually.

### 1.  Inherent Conflict of Interest

First, the Court has already addressed the appropriate standard of review in this matter, and has concluded that it is an arbitrary and capricious review, in which one factor is the fact that Defendant was operating under an inherent conflict of interest as both decisionmaker under the plan and responsible for payment of benefits.  Plaintiff is incorrect to the extent that she argues that the existence of such a conflict raises the standard of review or permits the Court to review Defendant's decision de novo.  Metropolitan Life, 554 U.S. at 116-17.

The Court has taken account of the existence of the inherent conflict of interest in this case, but does not find that it is sufficient, on its own, to render Defendant's determination of a denial of benefits to be arbitrary and capricious.  Plaintiff has not pointed to any procedural improprieties or prejudicial decision-making taken by Defendant to suggest that the coverage

14

determination was influenced by this conflict, as the Supreme
Court instructed in Metropolitan Life.  See id. at 117.
Consequently, while the Court has been mindful of the existence
of this conflict, the Court does not find that the conflict, in
isolation, warrants a finding of abuse of discretion or that
Defendant's determination was unsupported by substantial evidence
or contrary to law.

## 2.  Evidence of Intent, Disputes of Fact

Secondly, the Court will address Plaintiff's various
arguments regarding the potentially conflicting evidence of Mr.
Malin's intent in the early morning of February 21, 2009.
Plaintiff points to several facts in the record that she argues
would permit a reasonable factfinder to conclude that Mr. Malin
did not intend to injure or kill himself.  For example, Plaintiff
points to the absence of any evidence that Mr. Malin verbally
expressed any intent to kill himself, or left a suicide note.
Plaintiff also points to the fact that Mr. Malin removed some of
the bullets before he put it to his head and pulled the trigger
multiple times.[4]  Additionally, Plaintiff points to the reported
fact that this was apparently not the first time that Mr. Malin
had placed a gun to his head and pulled the trigger, potentially

---

[4] Plaintiff's brief characterizes this act as Mr. Malin
attempting to remove all of the bullets from the gun, but the
Court can find no evidence in the record to indicate whether Mr.
Malin intended to remove all of the bullets or only some.

permitting the inference that Mr. Malin did not expect, on this occasion, that doing so would lead to his injury or death.

Defendant points to contrary evidence in the record, on which a reasonable factfinder could conclude that Mr. Malin pulled the trigger intending to kill himself.  For example, Defendant points to the fact that Mr. Malin did not stop after pulling the trigger once, but continued to pull the trigger a second time.  Defendant also points to evidence in the record that Mr. Malin had a history of psychological trouble and was taking medication for such problems at the time of his death. Finally, Defendant explained that it relied on the opinion of the Assistant Medical Examiner who, after conducting an investigation, concluded that Mr. Malin's manner of death was suicide rather than an accident.

The question therefore posed by Plaintiff is whether it was arbitrary and capricious, without reason and unsupported by substantial evidence, for MetLife to determine on the basis of this record that Mr. Malin intended to commit suicide.  The Court finds that it was not.

The opinion of the Assistant Medical Examiner, recorded in the certificate of death, is a reasonable basis on which MetLife could rationally base its coverage decision.  In Delaware, the Medical Examiner's office is statutorily obligated to "fully investigate the essential facts" of any violent or unexpected

16

death in the state.  Del. Code Ann. tit. 29 § 4706(b).  The
result of this investigation, once established within reasonable
medical certainty, is recorded in a certificate of death.  Id. §
4707(a).  This certificate of death is admissible as competent
evidence "of the matters and facts therein contained."  Id. §
4710.  The state of Delaware relies on the facts reported in
certificates of death to the Office of Vital Statistics "to
assist the health community in planning, administering and
evaluating the quality, quantity and appropriate combination of
health services."  Id. § 6436.  Plaintiff argues that a medical
examiner's opinion in a certificate of death is not conclusive of
the fact of a suicide, citing Lohman v. General Am. Life Ins.
Co., 478 F.2d 719 (8th Cir. 1973).  However, Defendant correctly
points out that, as the factfinder on appeal, Defendant was
permitted to consider the Assistant Medical Examiner's opinion of
Mr. Malin's manner of death, along with the rest of the
administrative record.  Thus, the Court finds that the opinion of
the Assistant Medical Examiner is one on which an insurance
company such as Defendant can reasonably rely when finding as a
fact that Mr. Malin committed suicide.

Further, the opinion of the Assistant Medical Examiner that
death was the result of suicide is consistent with a
determination for coverage under Defendant's Supplemental Life
Insurance and Personal Accident Insurance benefits.  Plaintiff

17

points out that the Plan document itself does not define
"suicide," and argues that the Court should interpret the term in
an "ordinary and popular sense as would a person of average
intelligence and experience." Citing Babikan v. Paul Revere Life
Ins. Co., 63 F.3d 837, 840 (9th Cir. 1995).  Suicide has
traditionally and consistently been defined as "deliberately
put[ting] an end to [one's] own existence, or commit[ting] any
unlawful malicious act, the consequence of which is his own
death." Cruzan v. Director, Missouri Dept. of Health, 497 U.S.
261, 294 (1990) (Scalia, concurring) (quoting 4 W. Blackstone,
Commentaries *189).[5]  Similarly, the Delaware Office of the Chief
Medical Examiner defines "suicide" as recorded on the certificate
of death as a mortality caused by "intentional self harm."
Delaware Health Statistics Center, Delaware Vital Statistics
Annual Report, 2008, Delaware Department of Health and Social
Services Division of Public Health, 197, 2010.[6]  Thus, the Court
finds no meaningful semantic difference between what the
Assistant Medical Examiner meant by suicide when she determined
that was Mr. Malin's manner of death and how a reasonable person
would have interpreted the term in the supplemental life

---

[5]  See also Websters New World College Dictionary ("the act
of killing oneself intentionally"); Cambridge Dictionary of
American English ("the act of killing yourself intentionally").

[6]  Available at
http://dhss.delaware.gov/dhss/dph/hp/files/mort08.pdf

18

insurance and personal accident insurance benefits under the
Plan.

Finally, basing a coverage decision on the determination of
the Assistant Medical Examiner is not arbitrary and capricious
because, to one such as Plaintiff who feels that the Medical
Examiner's investigation led to an incorrect conclusion, Delaware
regulations provide a procedure to apply to the State Registrar
to amend a certificate of death.  See 16 Del. Admin. Code 4205-
10.2.  In the event that the Registrar denies such an
application, the applicant has the right to appeal such
determination to a court of competent jurisdiction.  Id. 4205-
10.10

Thus, the Court concludes that it was not arbitrary and
capricious for Defendant to determine that Mr. Malin died as a
result of suicide within the meaning of the Plan based on the
certificate of death alone.  However, the Court notes that
Defendant did not merely rely on this determination, but also
reviewed the police and medical records submitted by Plaintiff on
appeal, and independently determined that Mr. Malin's act of
putting a loaded gun to his head and pulling the trigger multiple
times "constitutes an intentional self inflicted injury."  Def.'s
Ex. K, ML000253, thereby independently providing a basis to deny
coverage under the personal accident insurance benefit.

Were the Court to independently review the administrative

19

record de novo, the Court might come to a different conclusion. But that level of review is not permitted to the Court under this Plan at this procedural posture.  Abnathya v. Hoffmann-La Roche, Inc., 2 F.3d 40, 45 (3d Cir. 1993).  The Court cannot, however, say that a denial of benefits based on the "manner of death" reported on the certificate of death and an independent review of the record supported by evidence in the record constitutes an arbitrary and capricious decision.

     3.   Presumption Against Suicide

     Finally, the Court finds Plaintiff's argument based on the common-law presumption against suicide to be unavailing.  While the Third Circuit has never recognized such a presumption in the context of an ERISA case such as this, other courts of appeals have recognized the existence of such a presumption.  See, e.g., Horton v. Reliance Standard Life Ins. Co., 141 F.3d 1038, 1041-42 (11th Cir. 1998).  However, even were the Court to recognize such a presumption in this context, the Court finds it does not alter the outcome in this deferential posture.

     In Eliskalns v. Provident Life and Accident Ins. Co., 230 F.3d 1366 (9th Cir. 2000) (unpublished), the case cited by Plaintiff to support the proposition that the presumption should apply here, the Ninth Circuit explained the limited value of such a presumption.  "[W]hile the presumption may control in the complete absence of evidence, it cannot be used as a tie-breaker

when actual evidence conflicts." Id. at *1.  See also Horton,
141 F.3d at 1042 (the presumption drops out once "the factfinder
becomes convinced, given all the evidence, that it is more likely
than not that [insured] committed suicide.")  Thus, in this case,
where there was some evidence of Mr. Malin's intent to commit
suicide, which was sufficient to persuade the factfinder, the
presumption against suicide does not override such evidence.


**IV.  CONCLUSION**

     This Court notes that we may never know what Mr. Malin's
true intent was on the early morning of February 21, 2009.  The
facts in the record could potentially permit multiple
conclusions.  However, two independent factfinders have
previously considered the circumstances and concluded that Mr.
Malin intended to kill himself when he pulled the trigger the
second time: first, the Delaware Assistant Medical Examiner, and
second, the claims administration team at MetLife.  Under the
terms of Mr. Malin's insurance Plan and ERISA caselaw, this Court
is not permitted to reevaluate those decisions on a blank canvas
at this stage.  Instead, this Court's role is limited to
determining whether MetLife's conclusion was arbitrary and
capricious.  As explained above, the Court has found that it was
not.

     Despite this legal conclusion, the Court recognizes that

life and death are often more complicated than the forum of
adjudicating a motion in this posture suggests.  The Court wishes
it could provide more comfort to Plaintiff than it can, but its
duties are circumscribed by the governing law.

    The accompanying Order shall be entered.


**February 22, 2012**
Date

      **s/ Jerome B. Simandle**
      JEROME B. SIMANDLE
      United States District Judge